**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| SHELLEY HARVEY, | ) | No. CV 13-5376-PLA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 30, 2013, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on August 30, 2013, and September 3, 2013.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 19, 2014, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on February 21, 1967. [Administrative Record ("AR") at 65-66, 137, 141, 155.] She has a twelfth grade education and past relevant work experience as a receptionist, a customer service representative, and an office clerk. [AR at 35-38, 50, 67, 160-61, 168-72.]

On August 3, 2010, plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she has been unable to work since June 30, 2010. [AR at 12, 137-45.] After her applications were denied initially, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 71-77.] A hearing was held on January 19, 2012, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 12, 30-54, 113, 115.] A vocational expert ("VE") also testified. [AR at 31, 49-53.] On March 30, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from June 30, 2010, through the date of the decision. [AR at 12-19.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 8.] When the Appeals Council denied plaintiff's request for review on May 31, 2013, the ALJ's decision became the final decision of the Commissioner. [AR at 1-5]; see Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

1998) (same).   When determining whether substantial evidence exists to support the

Commissioner's decision, the Court examines the administrative record as a whole, considering

adverse as well as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001);

see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must

consider the entire record as a whole and may not affirm simply by isolating a specific quantum

of supporting evidence.") (internal quotation marks and citation omitted).   "Where evidence is

susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  Ryan,

528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin.,

466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the

ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.").


**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

to engage in any substantial gainful activity owing to a physical or mental impairment that is

expected to result in death or which has lasted or is expected to last for a continuous period of at

least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

1992).


**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

substantial gainful activity, the second step requires the Commissioner to determine whether the

claimant has a "severe" impairment or combination of impairments significantly limiting her ability

to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

1    If the claimant has a "severe" impairment or combination of impairments, the third step requires

2    the Commissioner to determine whether the impairment or combination of impairments meets or

3    equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

4    Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

5    If the claimant's impairment or combination of impairments does not meet or equal an impairment

6    in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

7    sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

8    and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to

9    perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a

10   prima facie case of disability is established.  The Commissioner then bears the burden of

11   establishing that the claimant is not disabled, because she can perform other substantial gainful

12   work available in the national economy.  The determination of this issue comprises the fifth and

13   final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828

14   n.5; Drouin, 966 F.2d at 1257.

15

16   **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

17        In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful

18   activity since her alleged onset date, June 30, 2010.[1]  [AR at 14.]  At step two, the ALJ concluded

19   that plaintiff has the severe impairments of "status post left carpal tunnel release, left de

20   Quervain's release; right carpal tunnel syndrome; and cervical spine stenosis."  [Id.]  At step three,

21   the ALJ determined that plaintiff does not have an impairment or a combination of impairments

22   that meets or medically equals any of the impairments in the Listings.[2]  [AR at 15.]  The ALJ

23   further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform "less than

24   _____

25   [1]   The ALJ concluded that plaintiff met the insured status requirements of the Social
     Security Act through December 31, 2012.  [AR at 14.]

26
     [2]   See 20 C.F.R. pt. 404, subpt. P, app. 1.
27
     [3]   RFC is what a claimant can still do despite existing exertional and nonexertional
28                                                              (continued...)

4

1  the full range of light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).[4]   [Id.]

2  Specifically, the ALJ determined:

3          [Plaintiff] can lift and carry up to 20 pounds occasionally, 10 pounds
           frequently, stand and walk six hours of an eight hour workday, sit 6
4          hours of an eight hour day, is limited to frequent bilateral handling and
           fingering, frequent motions of the neck, frequent positioning of the
5          neck, frequent twisting with the right upper extremity and frequent fine
           manipulation with the right hand[.]

6

7  [Id.]   At step four, based on plaintiff's RFC and the VE's testimony, the ALJ concluded that plaintiff

8  is "capable of performing past relevant work" as a customer service representative, office clerk,

9  and receptionist.  [AR at 18.]   Accordingly, the ALJ determined that plaintiff was not disabled at

10  any time from June 30, 2010, through the date of the decision.  [AR at 12, 18.]

11

12                                         **V.**

13                             **THE ALJ'S DECISION**

14          Plaintiff contends that the ALJ: (1) failed to properly consider the opinion of Dr. Berman, and

15  (2) erred in rejecting plaintiff's subjective symptom testimony.  [Joint Stipulation ("JS") at 4-11, 14-

16  20, 24-26.]   As explained below, the Court agrees with plaintiff and remands for further

17  proceedings.

18

19

20

21  _____

22          [3](...continued)
    limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps
23  three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
    the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149,
24  1151 n.2 (9th Cir. 2007).

25          [4]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or
26  carrying objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a
    job is in this category when it requires a good deal of walking or standing, or when it involves
27  sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered
    capable of performing a full or wide range of light work, you must have the ability to do
28  substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).

## A.    EVALUATION OF MEDICAL EVIDENCE

Plaintiff contends that the ALJ failed to properly evaluate the opinion of Dr. Jeffrey Berman. [JS at 4-11, 14-15.]  Specifically, plaintiff argues that the ALJ "failed to account for the pain described by Dr. Berman and failed to fully account for or reject the limitations in neck motion or the preclusion of fine manipulation with the right hand."  [JS at 10.]

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians."  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927.  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  Lester, 81 F.3d at 830; Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician."  Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a[n] . . . examining physician's uncontradicted medical opinion based on clear and convincing reasons."  Carmickle, 533 F.3d at 1164 (internal quotation marks and citation omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).  "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  Carmickle, 533 F.3d at 1164 (internal quotation marks and citation omitted); Ryan, 528 F.3d at 1198.  The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick, 157 F.3d at 725.  The ALJ "must set  forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct."  Id.

On October 18, 2007, Dr. Jeffrey Berman performed an Agreed Medical Evaluation[5] of plaintiff.  [AR at 317-37.]  After reviewing plaintiff's medical records, obtaining x-ray images of

---

[5]    Dr. Berman was an examining physician in plaintiff's workers' compensation case.  [See AR at 16, 317.]

plaintiff's hands, wrists, and shoulders, and conducting a physical examination, Dr. Berman rendered impressions of history of cervical spine; discogenic bulging, "mainly at C3-4 - per cervical MRI"; history of sprain/strain, right shoulder, with impingement syndrome; "[h]istory of overuse syndrome, upper extremities"; history of de Quervain's tenosynovitis, bilateral; clinical evidence suggestive of right carpal tunnel syndrome; and clinical evidence suggestive of developing complex regional pain syndrome, right upper extremity.  [AR 320-30.]  Dr. Berman opined that plaintiff was "not yet permanent and stationary,"[6] and was "temporarily totally disabled."  [AR at 332.]

On June 2, 2008, Dr. Berman performed an Agreed Medical Reevaluation of plaintiff.  [AR at 360-73.]   After reviewing plaintiff's updated medical records and conducting a physical examination, Dr. Berman noted that plaintiff had improvement in her right shoulder and had "responded favorably" to a series of stellate ganglion blocks, "resolv[ing] the complex regional pain syndrome."  [AR at 362-65, 367.]  Dr. Berman then opined that, "with regard to any further conservative management . . . [plaintiff] would be permanent and stationary, having reached maximum medical improvement."  [AR at 367.]  Dr. Berman did note, however, that plaintiff "has findings that would warrant consideration for surgery."  [Id.]  With regard to plaintiff's subjective residuals, Dr. Berman stated, among other things, that:

> residuals to the neck and upper back/shoulder girdle areas would be intermittent and slight, increasing to the level of slight to moderate intermittently.    Upper extremity complaints bilateral would be intermittent and slight with use.  On the right, this will reach moderate intermittently and on the left intermittent, slight to moderate.  This would occur with lifting, grasping, twisting, pushing, pulling, and other such activities. . . . With regard to the cervical spine, she should avoid repetitive motions of the neck and prolonged positioning.  Concerning the upper extremities, she is precluded from forceful activities and fine manipulative activities.

---

[6]   A disability is considered "permanent and stationary" for workers' compensation purposes "after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time." Gangwish v. Workers' Comp. Appeals Bd., 89 Cal.App.4th 1284, 1289 n. 7, 108 Cal.Rptr.2d 1 (Cal.App. 2 Dist. 2001) (quoting Cal.Code Regs. tit. 8, § 10152).

1    [AR at 367-68 (emphasis in original).]  Dr. Berman concluded that "[plaintiff] cannot return to her

2    previous job."  [AR at 369.]

3         On September 8, 2009, Dr. Berman completed a Status Report and performed another

4    Agreed Medical Revaluation of plaintiff.  [AR at 374-87.]  After conducting a physical examination

5    and reviewing plaintiff's updated medical records, which included surgery for right carpal tunnel

6    release and right de Quervain's release, Dr. Berman noted that plaintiff was "not yet permanent

7    and stationary/MMI [("Maximum Medical Improvement")]" because plaintiff's surgeries for left

8    carpal tunnel release and left de Quervain's release were pending.  [AR at 378-83.]  He noted that

9    plaintiff "is working part time as a student worker," and opined that she is not temporarily disabled,

10   but that she cannot return to her full duties.  [AR at 374.]

11        On June 25, 2010, plaintiff's treating physician, Dr. Philip Sobol, completed a Primary

12   Treating Physician's Progress Report, including a summary of plaintiff's visits dating from

13   November 2006, to June 2010.  [AR at 255-68.]  Dr. Sobol "defer[red] issues of impairment and

14   permanent disability along with future medical care issues for the right shoulder and cervical spine

15   to the Agreed Medical Examiner, Dr. Jeffrey Berman, who addressed these issues in his prior

16   Agreed Medical Examination reports."  [AR at 264.]  He concluded that he "would agree with the

17   future medical care issues as outlined by Dr. Jeffrey Berman," and that "the work restrictions as

18   provided by Dr. Jeffrey Berman . . . are appropriate and compatible with the patient's new job

19   duties."  [AR at 266-67.]

20        Finally, on September 7, 2010, Dr. Berman performed yet another Agreed Medical

21   Reevaluation of plaintiff.  [AR at 388-407.]  After reviewing plaintiff's updated medical records,

22   which included reports of bilateral carpal tunnel release and de Quervain's release, conducting a

23   physical examination, and obtaining x-ray images [AR at 388-99], Dr. Berman discussed that

24   plaintiff "does not demonstrate any obvious findings consistent with a complex regional pain

25   syndrome."  [AR at 398.]  Dr. Berman also discussed that plaintiff "has done remarkably well with

26   regard[] to the left upper extremity," but, despite surgery, "continues to have residuals to include

27   a positive Tinel's sign for carpal tunnel syndrome" on the right side.  [AR at 399-400.]  Regarding

28   the neck, Dr. Berman discussed that  plaintiff "has some residuals to the cervical region."  [AR at

400.] He added that plaintiff "has improved clinically and does not show signs of radiculopathy."

[Id.] Dr. Berman concluded that plaintiff is "permanent and stationary, having reached maximum

medical improvement." [Id.] As for residuals and functional limitations, Dr. Berman stated:

> Subjective residuals related to the right upper extremity would be intermittent and slight, increasing to the level of slight to moderate intermittently and on occasion, approaching moderate. . . . Neck complaints would be characterized as intermittent and slight, reaching slight to moderate intermittently. . . . With regard[] to the cervical spine, I would suggest that she avoid repetitive motions of the neck and prolonged positioning. Concerning the right upper extremity, she should avoid very forceful repetitive grasping and twisting activities, as well as fine manipulative activities. She requires no limitations as it concerns the left upper extremity.

[AR at 401-02 (emphasis in original).] Finally, he opined that although plaintiff "cannot . . . return

to her previous job as a court service worker [because it] involved a lot in the way of upper

extremity activities that she probably cannot perform without getting worse," it would be "well within

her limitations" for plaintiff to continue to work in a modified capacity for her current employer. [AR

at 404.]

        In his decision, in assessing plaintiff's RFC, the ALJ gave the "greatest weight" to the

opinion of Dr. Berman "particularly in light of the treating physician[] [Dr. Sobol's] deferral to his

assessment" [AR at 17], and "because that individual is a well-qualified and neutral doctor selected

by the parties to a workers' compensation claim and has no constraints of advocacy." [AR at 18.]

Specifically, the ALJ repeated the functional limitations to plaintiff's neck and right upper extremity

as expressed in Dr. Berman's September 7, 2010, Agreed Medical Reevaluation. [AR at 17; see

AR at 401-02.]  He noted that "the AME's functional assessment is well supported by the

diagnostic findings and clinical data gathered during the course of four separate evaluations of

[plaintiff] since October 2007 and extensive medical records review including a cervical MRI and

electrodiagnostic studies." [AR at 17.] The ALJ concluded that the "residual functional capacity

assessment [of less than the full range of light work] is supported by factors from the above

credibility analysis and the evidence cited in support thereof." [AR at 18.]

        The ALJ failed to "translate" Dr. Berman's terms of art, which were initially elicited in a

workers' compensation proceeding, into social security terminology and, because of this, under

1  the circumstances presented here, the ALJ's Social Security disability determination failed to

2  accurately reflect the opinion of Dr. Berman.  See Booth v. Barnhart, 181 F.Supp.2d 1099, 1106

3  (C.D. Cal. 2002) ("[w]hile the ALJ's decision need not contain an explicit 'translation,' it should at

4  least indicate that the ALJ recognized the differences between the relevant state workers'

5  compensation terminology, on the one hand, and the relevant Social Security disability

6  terminology, on the other hand, and took those differences into account in evaluating the medical

7  evidence"); see also Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir.

8  1988) (error for the ALJ to assume that a workers' compensation preclusion from "heavy work"

9  was the same as a social security preclusion from "heavy lifting" because categories of work are

10 measured quite differently under the two systems and the "ALJ did not adequately consider this

11 distinction"); see also Alvarez v. Astrue, 2012 WL 282110, at *3 (C.D. Cal. Jan. 26, 2012) (error

12 for the ALJ to seemingly accept an AME's opinion that plaintiff is precluded from "fine

13 manipulation" but then include in plaintiff's RFC assessment the limitation to "frequent . . . fine

14 manipulation," indicating "that the ALJ interpreted fine manipulation in the social security context

15 as different from the same term in the workers' compensation context"); but see Meija-Raigoza

16 v. Astrue, 2010 WL 1797245, at *9 (E.D. Cal. May 3, 2010) (ALJ did not misunderstand an AME's

17 opinion when the opinion was set forth in terms of lifting capacity, "which is the same classification

18 scheme used in social security, [because] there wasn't much to 'translate'").  Here, Dr. Berman's

19 opinion provided clear functional limitations.  Most importantly, he stated that plaintiff "should avoid

20 repetitive motions of the neck . . . [and] fine manipulative activities."  [See AR at 401-02.]  The ALJ

21 gave the "greatest weight" to this opinion, but then stated, as part of plaintiff's RFC, that plaintiff

22 was limited to "frequent motions . . . [and] positioning of the neck" and "frequent fine manipulation."

23 [AR at 15-17 (emphasis added).]  The ALJ failed to explain whether his RFC assessment of

24 plaintiff adopted or rejected the functional limitations set forth by Dr. Berman.  If the ALJ intended

25 to reject Dr. Berman's limitations, he needed to provide clear and convincing reasons for doing

26 so.  Carmickle, 533 F.3d at 1164.  Assuming that the ALJ did not intend to reject Dr. Berman's

27 limitations, but instead drew an inference that Dr. Berman's limitations (in the workers'

28 compensation setting) translated to the limitations in plaintiff's social security RFC, the ALJ had

1    a duty to "explain the basis for [the] material inference the ALJ has drawn . . . so that meaningful

2    judicial review will be facilitated."  Booth, 181 F.Supp.2d at 1106.

3         Additionally, the ALJ's failure to accurately explain or include Dr. Berman's opinion in his

4    RFC assessment was not harmless because the VE's testimony that plaintiff is capable of

5    performing work her past work as well as other work available in the national and regional

6    economies was based on the ALJ's hypotheticals, which only addressed limiting neck movement

7    and fine manipulation to "frequent" or "occasional."  [AR at 50-51.]  Because the ALJ did not ask

8    the VE whether any work could be performed by a person with the limitations assessed by Dr.

9    Berman, i.e., avoid repetitive motions of the neck and avoid fine manipulative activities, there is

10   no evidence in the record that plaintiff could perform any work in the national and regional

11   economies if she in fact has such limitations.

12        Under the circumstances, the ALJ erred by failing to translate the terms in Dr. Berman's

13   opinion and remand is warranted.[7]

14

15   **B.    CREDIBILITY**

16        Plaintiff contends that the ALJ erred in rejecting plaintiff's subjective symptom testimony.

17   [Joint Stipulation ("JS") at 4, 15-20, 24-26.]

18        "To determine whether a claimant's testimony regarding subjective pain or symptoms is

19   credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028,

20   1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented

21   objective medical evidence of an underlying impairment 'which could reasonably be expected to

22   produce the pain or other symptoms alleged.'"  Id.  at 1036 (quoting Bunnell v. Sullivan, 947 F.2d

23   341, 344 (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may

24   reject the claimant's testimony about the severity of his symptoms "only upon (1) finding evidence

25

26   [7]    Plaintiff's argument that the ALJ failed to account for the pain described by Dr. Berman
     does not, on its own, warrant remand. Because Dr. Berman's opinion with regard to plaintiff's
27   functional limitations appears after his assessment of plaintiff's pain, the Court finds reasonable
     the ALJ's apparent inference that Dr. Berman's opined functional limitations incorporated his
28   finding with regard to plaintiff's pain levels.

of malingering, or (2) expressing clear and convincing reasons for doing so." <u>Benton v. Barnhart</u>, 331 F.3d 1030, 1040 (9th Cir. 2003). Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. <u>See Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002); <u>see also</u> 20 C.F.R. §§ 404.1529(c), 416.929(c). If properly supported, the ALJ's credibility determination is entitled to "great deference." <u>See Green v. Heckler</u>, 803 F.2d 528, 532 (9th Cir. 1986).

Where, as here, the ALJ did not find "affirmative evidence" of malingering [<u>see</u>, <u>generally</u>, AR at 12-19], the ALJ's reasons for rejecting a claimant's credibility must be clear and convincing. <u>See Benton</u>, 331 F.3d at 1040 (Where there is no evidence of malingering, the ALJ can reject claimant's testimony only by "expressing clear and convincing reasons for doing so."). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." <u>Reddick</u>, 157 F.3d at 722 (internal quotation marks and citation omitted); <u>Berry</u>, 622 F.3d at 1234 (same). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." <u>Bunnell</u>, 947 F.2d at 345-46 (internal quotation marks and citation omitted). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." <u>Id.</u> at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. <u>Albalos v. Sullivan</u>, 907 F.2d 871, 874 (9th Cir. 1990) (<u>per curiam</u>).

In a Pain Questionnaire dated August 23, 2010 [AR at 165-68], plaintiff stated that she has pain on and off throughout the day in her fingertips, hands, wrists, arms, armpits, and shoulders, and that she takes Acetaminophen with Codeine, Dendracin, Ketoprofen, and Ibuprofen for her pain. [AR at 165.] She also stated that her medicine makes her sleepy and nauseous at times, and that the her pain has altered her daily activities, such that she does "less driving, less

1  household chores, no lifting, [she] can[']t shop []long, [has difficulty] picking up items," does "very

2  little writing," has difficulty combing her hair, and carries smaller purses.  [AR at 166.]  She

3  indicated, among other things, that she is able to walk two miles, stand for thirty minutes, sit for

4  an hour or longer at a time, and do light housekeeping chores without assistance.  [AR at 167.]

5        At the hearing on January 19, 2012, plaintiff testified that, when she worked at Southwest

6  College, she would work approximately twenty to twenty-five hours each week, but that she

7  missed a lot of work because of migraines and muscle spasms.  [AR at 35-37.]  She then stated

8  that she wishes she could work but that her typing ability has been cut in half and "[a] lot of people

9  have a hard time reading [her] penmanship."  [AR at 38.]  She further testified that she "wake[s]

10  up a lot . . . get[s] bad crooks in [her] neck," and her back "has been swollen to where they now

11  want to do injections to where it's causing [her] the migraines."  [Id.]  In addition, she reported that

12  these migraines last up to three days and that she gets them two to three times per month.  [AR

13  at 38, 46.]  She testified that she experiences pain in her right hand, arm, shoulder, and neck, and

14  described the pain as "[t]ingling, numbness."  [AR at 42-43.]  She further testified that she gets

15  muscle spasms, which stop her from turning her neck.  [AR at 43-44.]  Finally, she stated that her

16  impairment makes it hard for her to sit and stand more than twenty minutes at a time.  [AR at 44-

17  45.]

18        In his decision, the ALJ found plaintiff's "medically determinable impairments could

19  reasonably be expected to cause the alleged symptoms" [AR at 16], which "satisfie[s] the first

20  prong of the ALJ's inquiry regarding the credibility of [plaintiff]'s complaints."  Vasquez v. Astrue,

21  572 F.3d 586, 591 (9th Cir. 2009).  The ALJ went on to find, however, that plaintiff's "statements

22  concerning the intensity, persistence and limiting effects of these symptoms are not credible to the

23  extent they are inconsistent with" the assessed RFC.  [AR at 16.]  Thus, at step two, as the record

24  contains no evidence of malingering by plaintiff, the ALJ was required to offer "specific, clear and

25  convincing reasons" for rejecting her subjective symptom testimony.  See Lingenfelter, 504 F.3d

26  at 1036.  "General findings are insufficient; rather, the ALJ must identify what testimony is not

27  credible and what evidence undermines [plaintiff's] complaints."  Reddick, 157 F.3d at 722 (internal

28  quotation marks and citation omitted).

1    The ALJ rejected plaintiff's subjective symptom testimony because he found that: (1)

2    plaintiff "engages in activities that exceed" her RFC, specifically working part-time as a student

3    worker, (2) "the conservative nature of her remedies is inconsistent with the alleged intensity,

4    frequency, duration, and purportedly limiting effects of her symptoms," (3) "there is . . . evidence

5    of non-compliance with prescribed treatment," (4) plaintiff's "activities of daily living do not appear

6    to be substantially impeded," and (5) the "objective medical evidence does not fully support

7    [plaintiff's] complaints."  [AR at 16-17.]

8    Having carefully reviewed the record, the Court finds that the ALJ's reasons for discrediting

9    plaintiff's subjective complaints to the extent explained above do not constitute clear and

10   convincing reasons and/or are not supported by substantial evidence.  The first reason that the

11   ALJ cited for discrediting plaintiff's testimony is that plaintiff worked part-time as a student worker,

12   which indicated that plaintiff "engages in activities that exceed" her RFC.  [AR at 17.]  An ALJ may

13   consider ability to do part-time work in assessing credibility.  See McCalmon v. Astrue, 319 Fed.

14   App'x 658, 660 (9th Cir. 2009).  However, the evidence that an ALJ uses to support his credibility

15   determination must still meet the clear and convincing standard.  See Benton, 331 F.3d at 1040.

16   Here, the ALJ failed to address evidence that plaintiff was working in a modified capacity and was

17   ultimately not asked to come back because she was missing up to three days a week due to

18   "personal problems" including migraines and muscle spasms.  [AR at 37, 389]; see Moya v.

19   Astrue, 2011 WL 5873035, at *6 (C.D. Cal. Nov. 22, 2011) (error for the ALJ to use part-time work

20   as a reason for discrediting plaintiff's testimony because the ALJ failed to acknowledge that

21   plaintiff lost her part-time job because of medication side effects).  Thus, this reason for

22   discrediting plaintiff's testimony is not clear and convincing.

23   The ALJ's second reason for rejecting plaintiff's subjective symptom testimony, her

24   conservative back treatment, is also not clear and convincing.  The ALJ stated that treatment for

25   plaintiff's back "has consisted of pain medication, epidural steroid injections, and other overtly

26   conservative measures."  [AR at 17.]  Conservative treatment can be used as a basis for

27   discrediting plaintiff testimony.  See, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007)

28   ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding

1  severity of an impairment.")  Here, however, the ALJ's finding of conservative treatment is not

2  supported by the record.[8]  Although Dr. Berman noted that he "[does] not believe [plaintiff] requires

3  cervical surgery," she still received injections to the cervical region consisting of stellate ganglion

4  blocks, and continued to have residuals.  [AR at 264, 398, 400.]  For this reason, the ALJ's

5  reliance on conservative treatment to support an adverse credibility finding is not supported by the

6  record.  See Yang v. Barnhart, 2006 WL 3694857, *4 (C.D. Cal. Dec. 12, 2006) (ALJ's finding that

7  claimant received conservative treatment was not supported by substantial evidence when

8  claimant underwent physical therapy and epidural injections, and was treated with several pain

9  medications); see also Huerta v. Astrue, 2009 WL 2241797 (C.D. Cal. July 22, 2009) (ALJ's

10 finding that claimant received conservative treatment was not supported by substantial evidence

11 when claimant underwent neck surgery and epidural steroid injections in her cervical spine).

12      As a third reason for discrediting plaintiff's testimony, the ALJ cites that plaintiff was non-

13 compliant with treatment.  [AR at 17.]  The ALJ states that plaintiff "refuses to take medication

14 prescribed to her weeks earlier without reasonable explanation. . . . [and this] suggests a lack of

15 cooperation and an unwillingness to do that which is necessary to facilitate her return to

16 substantial gainful activity."  [Id.]  A review of the record indicates that plaintiff was in fact

17 prescribed medication for vaginal discharge at UMMA Community Clinic, which she refused to

18 take. [AR at 411.] An ALJ may properly rely on an "unexplained or inadequately explained failure

19 to seek treatment or to follow a prescribed course of treatment" to discredit a claimant's subjective

20 symptom testimony.  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal

21 quotation marks and citation omitted).  Plaintiff argues, and the Court agrees, that this episode of

22 non-compliance has "nothing to do with the impairments causing disability;" no instances of non-

23 compliance relating to her severe impairments are cited. [JS at 18.] If the ALJ wished to discredit

24 plaintiff based on this one instance of noncompliance, the ALJ should have developed the record

25 by asking plaintiff about her failure to take her prescribed medication.  See  Fair v. Bowen, 885

26

27      [8]    "Conservative treatment" has been characterized by the Ninth Circuit as, for example,
   "treat[ment] with an over-the-counter pain medication" (Parra, 481 F.3d at 751), or a physician's
28 failure "to prescribe ... any serious medical treatment for [a claimant's] supposedly excruciating
   pain."  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir.1999).

F.2d 597, 603 (9th Cir.1989) (plaintiff's noncompliance must be "unexplained[] or inadequately explained" to support a finding of non-credibility); see also SSR 96–7p, 1996 WL 374186, at *7 ("The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.")   In addition, this one instance of noncompliance does not display a pattern or the "type of apathy that would suggest that plaintiff's symptoms are not as serious as alleged." Hernandez v. Colvin, 2013 WL 655261 (C.D. Cal. Feb. 22, 2013).   For these reasons, the Court finds that the ALJ's reliance on non-compliance with treatment to discredit plaintiff was insufficient.

Fourth, the ALJ appears to have rejected plaintiff's subjective symptom testimony, in part, because of his finding that plaintiff's "activities of daily living do not appear to be substantially impeded." [AR at 17.] This reason is not supported by substantial evidence.   Specifically, the ALJ noted that "[a]ccording to Dr. Berman's report and [plaintiff's] testimony, although she complains of pain in the right upper extremity with activities, she still manages to attend to her own personal care needs, cook simple meals, drive short distances and use of her left upper extremity is unaffected."   [Id.]   The ALJ fails to specify how plaintiff's activities, as included in her medical treatment notes, translate into an ability to perform gainful employment.   See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (holding that an ALJ must "make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination") (internal quotation marks, brackets and citation omitted); Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (ALJ errs in failing to make a finding to the effect that ability to perform daily activities translated into the ability to perform appropriate work); see also Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

Finally, while an ALJ may consider whether a lack of objective medical evidence supports the degree of limitation, this "cannot form the sole basis for discounting pain testimony." Burch

1   v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).  "The rationale for this restriction is that pain

2   testimony may establish greater limitations than can medical evidence alone." Id. at 680 (citing

3   SSR 96-7p); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the

4   intensity and persistence of your pain or other symptoms or about the effect your symptoms have

5   on your ability to work solely because the available objective medical evidence does not

6   substantiate your statements.").  Thus, even assuming the ALJ's characterization of the medical

7   evidence is supported by substantial evidence, the ALJ may rely upon this rationale only if any of

8   his other reasons for discounting plaintiff's credibility is proper.  As discussed supra, they are not.

9        The ALJ failed to offer any legally adequate reasons for discounting plaintiff's credibility.

10   Remand is warranted.

11

12                        **VI.**

13            **REMAND FOR FURTHER PROCEEDINGS**

14        The Court has discretion to remand or reverse and award benefits.  McAllister v. Sullivan,

15   888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further

16   proceedings, or where the record has been fully developed, it is appropriate to exercise this

17   discretion to direct an immediate award of benefits.  See Lingenfelter, 504 F.3d at 1041; Benecke

18   v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are outstanding issues that must

19   be resolved before a determination can be made, and it is not clear from the record that the ALJ

20   would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is

21   appropriate.  See Benecke, 379 F.3d at 593-96.

22        Here, there are outstanding issues that must be resolved before a final determination can

23   be made.  However, in an effort to expedite these proceedings and to avoid any confusion or

24   misunderstanding as to what the Court intends, the Court will set forth the scope of the remand

25   proceedings.  First, the ALJ on remand will reconsider the opinion of Dr. Berman.  [See AR at 398-

26   405.]  In assessing the medical opinion evidence of Dr. Berman, the ALJ must "translate" the

27   functionality terms used by Dr. Berman and/or provide legally adequate reasons for any portion of

28

his opinion that the ALJ rejects.  Next, the ALJ shall reassess plaintiff's credibility and proceed with the remainder of the five step analysis as required by the new evaluation.

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 5, 2014

_____
                        PAUL L. ABRAMS
                UNITED STATES MAGISTRATE JUDGE